UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
Chrysler LLC, *et al.*,

               Plaintiffs,

  v.                                                                                   Civil Action No. 09-CV-4743 (LAP)

Indiana State Teachers' Retirement
Fund, *et al.*,

               Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**OPPOSITION TO MOTION OF THE INDIANA PENSIONERS
FOR A STAY OF PROCEEDINGS PENDING DETERMINATION
OF MOTION TO WITHDRAW THE REFERENCE**

Fiat S.p.A. ("Fiat") submits this memorandum in opposition to the appeal of the Indiana Pensioners from the denial of their motion for a stay of proceedings pending determination of their motion to withdraw the reference. That motion was denied by the Bankruptcy Court in a well-reasoned order on May 20, 2009. Fiat understands that the Debtors and the U.S. Department of the Treasury are also opposing the appeal from the order denying the stay motion, and Fiat does not intend to repeat all of the arguments made in those oppositions – although it agrees with them. Instead, Fiat will focus on the harm that will be suffered if a stay is granted.

The four-part test for granting a stay of proceedings in a bankruptcy case requires the movant to prove (i) a likelihood of success on the merits, (ii) that the movant will suffer irreparable harm if the stay is not granted, (iii) that the Debtors will not be harmed substantially by issuance of the stay, and (iv) that the public interest will be served

by granting the stay.  *In re Dana Corp.*, 2007 WL 2908221, at *1 (Bankr. S.D.N.Y. Oct. 3, 2007) (citing *In re Issa Corp.*, 142 B.R. 75, 77 (Bankr. S.D.N.Y. 1992)).  Importantly, as the Bankruptcy Court noted (Order at 4), in assessing the third factor in the bankruptcy context, "a court must concern itself not only with harm to the nonmovant from a stay, but harm to the interests of the entire bankruptcy estate."  *Dana Corp.*, 2007 WL 2908221, at *1 (citing *In re Leslie Fay Cos., Inc.*, 181 B.R. 156, 160 (Bankr. S.D.N.Y. 1995)).  The Indiana Pensioners have not – and cannot –  prove that no harm would be suffered by the many constituencies that are depending on prompt completion of the sale process if a stay is granted.

It is apparent from the fact that the U.S. Department of the Treasury is providing debtor-in-possession financing to the Debtors in the amount of $30 million per day, despite the fact that Chrysler ceased all manufacturing operations on May 1, 2009, that there is no way Old Chrysler could survive without the transaction opposed by the Indiana Pensioners.  The only way that the tens of thousands of people employed by Old Chrysler and the hundreds of thousands of other people employed by Chrysler dealers and suppliers will avoid unemployment is if the sale process is completed promptly.  If Old Chrysler is forced into liquidation, all of these people will lose their jobs.

Fiat intends to make substantial changes to the assets that New Chrysler is acquiring from the Debtors, changes that are possible only because of a large infusion of cash from the U.S. Department of the Treasury and Fiat's transfer of valuable proprietary technology and management skills.  Together with important concessions made by labor unions, most prominently the United Auto Workers, Fiat hopes and expects that its contributions will enable New Chrysler to emerge as a manufacturer of fuel-efficient

vehicles that are popular with consumers, making a significant contribution to the U.S. economy.  Fiat's contributions to New Chrysler will include, *inter alia*, introducing Fiat's fuel-efficient small vehicle platforms, providing access to Fiat's distribution capabilities in key growth markets, and facilitating savings in procurement based on the scale of Fiat's global operations.  Even with these contributions, however, the viability of New Chrysler depends on the sale process being concluded as quickly as possible.

Fiat is already concerned about the deteriorating value of the assets to be acquired by New Chrysler from Old Chrysler.  Delaying the sale process would not only be costly but could ultimately prove fatal to Fiat's ability to bring New Chrysler to life.  Automobile assembly plants are large and complicated, and the longer those factories remain idle, the more difficult and costly it will be to reopen them.  Moreover, the many suppliers of parts to those factories cannot survive for long without purchases from New Chrysler.  If those suppliers go out of business, it will be even harder for new Chrysler to resume manufacturing operations – and could jeopardize the financial health of other struggling U.S. automakers.  Furthermore, the longer the Chrysler dealer network is without new vehicles to sell and without spare parts to repair existing vehicles, the greater the risk that the distribution network that is crucial to New Chrysler's success will fall apart.  If spare parts become scarce and consumers have difficulty getting their vehicles serviced, the image of the Chrysler brand will suffer more than it already has from the company's highly publicized financial turmoil.  If consumers shy away from Chrysler-branded vehicles, the task of restoring New Chrysler to profitability will become even more challenging for Fiat and could prove impossible.

In sum, there is a real risk that delaying the sale process will cause the transaction to unravel and force the liquidation of Old Chrysler.  Given the dire consequences that would result from such a liquidation, it is utterly baseless for the Indiana Pensioners to contend that there would be no harm to the interests of the Debtors and the bankruptcy estate if a stay were granted.

The same is true with respect to the fourth factor, namely, the public interest.  The injury to Chrysler's employees, suppliers and dealers will ripple through the national economy – including that of Indiana itself – increasing unemployment costs and reducing overall economic activity.  In addition, the billions of dollars of taxpayer money already expended in the effort to salvage Chrysler as an operating enterprise will have been for naught.

If the Court nonetheless decides to grant a stay, Fiat requests that the Indiana Pensioners be required to post a substantial bond to compensate Fiat and other interested parties harmed by a delay in the sale process in the event that the Indiana Petitioners fail in their efforts to block the transaction.  Federal Rule of Bankruptcy Procedure 8005 expressly authorizes a district court to condition relief granted on an appeal from an order of a bankruptcy judge "on the filing of a bond or other appropriate security."  Such a bond is fully appropriate in these circumstances given the possibility that a delay in the sale process will force Old Chrysler into liquidation, with all of the attendant adverse consequences, and there is no good reason not to require the posting of a bond.  *See ACC Bondholder Group* v. *Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 361 B.R. 337, 368 (S.D.N.Y. 2007) (requiring appellant to post $1.3 billion bond).  If the Indiana Pensioners fail in their

- 4 -

- 5 -

attempt to halt the sale process, the bond can be used to compensate parties injured by the unnecessary delay that the Indiana Pensioners caused.

## CONCLUSION

For the foregoing reasons, Fiat respectfully requests that the Court deny the requested stay.  In the alternative, Fiat requests that the Court order the Indiana Pensioners to post a bond in an amount commensurate with the potentially catastrophic losses that would result from a delay in the sale process.

Dated:  May 22, 2009
       New York, New York

                                        /s/
                            John L. Warden (JW6918)
                            Steven L. Holley (SH2485)
                            SULLIVAN & CROMWELL LLP
                            125 Broad Street
                            New York, New York 10004
                            Telephone:  (212) 558-4000
                            Facsimile:  (212) 558-3588