UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------------- x
                                 ::

 In re:                            ::      ECF Case
                                 ::

 Chrysler LLC, *et al.*,             ::      09 Civ. 4743 (LAP)
                                 ::

                     Debtors.    ::
--------------------------------------------------------------------------- x

## MEMORANDUM OF LAW OF THE UNITED STATES

## IN OPPOSITION TO A STAY OF RELATED BANKRUPTCY PROCEEDINGS

LEV L. DASSIN
Acting United States Attorney for the
Southern District of New York
By:   JEANNETTE A. VARGAS
       TARA LAMORTE
       LI YU
Assistant United States Attorneys
86 Chambers Street, Third Floor
New York, New York 10007
Telephone:    (212) 637-2678/2746/2734
Facsimile:     (212) 637-2702
Email:        Jeannette.Vargas@usdoj.gov
               Tara.LaMorte2@usdoj.gov
               Li.Yu@usdoj.gov

- and -

John J. Rapisardi
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York  10281
Telephone:    (212) 504-6000
Facsimile:     (212) 504-6666
Email:        john.rapisardi@cwt.com

TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ........................................................................................................................2

    I.    A Stay Should Be Denied Because It Would Massively Harm Chrysler and be
        Directly Contrary to the Public Interest ...................................................................2

    II.   Objectors Have Failed to Show a Likelihood of Irreparable Harm ...........................4

        A.   Objectors Cannot Show That They Will Suffer Any Loss If the Proposed Sale
              Is Approved ........................................................................................ 4

        B.   Any Loss Related to Consummation of the Sale Is Merely Speculative
              International Comity ........................................................................... 5

    III.  There Is No Likelihood That Objectors Will Succeed on the Merits .........................6

        A.   Objectors Cannot Succeed on Their Motion to Withdraw the Reference
              Because the Motion to Withdraw Is Untimely and Because They Have Not
              Established Standing to Pursue Their Claims ..................................... 6

        B.   Objectors Are Not Entitled to a Stay Unless They Can Demonstrate the
              Substantive Merits of Their Asserted Statutory and
              Constitutional Arguments .................................................................. 6

        C.   Objectors' Statutory and Constitutional Arguments Lack Merit .................... 8

             1.   Youngstown Is Inapposite Because The Government Has Not Seized
                  Chrysler And In Any Event Its Actions Are Authorized By Congress ...... 8

             2.   Treasury's Transactions Fall Within The Express Authority Of EESA .... 9

CONCLUSION .....................................................................................................................13

The United States of America, through the United States Department of the Treasury (the "Treasury Department"), by its attorney Lev L. Dassin, Acting United States Attorney for the Southern District of New York, submits this memorandum of law in opposition to the motion (the "Stay Motion") of Indiana State Teachers Retirement Fund, Indiana State Police Pension Trust, and Indiana Major Moves Construction Trust (collectively, the "Objectors"), a group of disaffected creditors of Chrysler LLC and its affiliates ("Chrysler" or "Debtors"), seeking to stay a hearing on a proposed sale (the "Proposed Sale") of Chrysler's assets in the related matters of *In re Chrysler, LLC, et al*., No. 09-50002(AJG) (the "Bankruptcy Action").

## PRELIMINARY STATEMENT

This is Objectors' second bite at the apple on seeking a stay.  They have already unsuccessfully raised this argument before the Bankruptcy Court.  Indeed, Judge Gonzalez considered and rejected an identical motion after briefing by the Objectors and oral argument. The Objectors fail to identify any error or mistake in Judge Gonzalez's well-reasoned, detailed six-page decision or to explain why the result should be any different in their second bite at the apple.  In fact, no such reason exists.

The Bankruptcy Court's decision was founded on an analysis of the four-part legal standard for obtaining a stay of bankruptcy proceedings:  a request for a stay should be denied unless the Objectors can show (*i*) they are likely to succeed on the merits, (*ii*) they are likely to face irreparable harm if a stay is denied, (*iii*) granting a stay is unlikely to cause substantial harm to the debtors, and (*iv*) public interest is served by a stay.  *See In re Dana Corp.*, 2007 WL 2908221, at *1 (Bankr. S.D.N.Y. Oct. 3, 2007) (internal citation omitted).  The Objectors cannot establish even one of these prongs.  Most glaring and obvious is the Objectors' failure to even address the third and fourth factors in their papers.  Contrary to the Objectors' claims, granting a stay here would almost certainly cause grievous harm to Debtors and harm the public interest.  If

the proceedings are stayed, Chrysler faces a default under its $4.2 billion post-petition credit

agreement, unless waived, and almost certain immediate liquidation.  Directly and indirectly,

hundreds of thousands of jobs and billions of dollars are at risk if a stay is granted.  On this basis

alone, a stay should be denied.

Moreover, as detailed below, Objectors cannot establish the other factors needed to

obtain a stay. They have failed to identify any loss that would be caused by the denial of a stay

and failed to explain why any asserted harm is not merely speculative.  *See infra* at 2-4.  They

also cannot show a likelihood of success either on their motion to withdraw the reference or on

the underlying merits of their assertions because:

- Their motion to withdraw is untimely as a matter of law and should be denied;

- There is no basis to withdraw the reference because the issues before the Bankruptcy Court are fundamentally bankruptcy issues;

- The Objectors have failed to address the serious obstacles to their standing – without doing so, they cannot bring their substantive objections to Treasury's use of funds in connection with the Chrysler bankruptcy; and

- The substantive objections to Treasury's actions have no merit.

For all of these reasons, the motion to stay proceedings should be denied here as it was by Judge

Gonzalez below.

## ARGUMENT

## I.   A Stay Should Be Denied Because It Would Massively Harm Chrysler and Is Directly Contrary to the Public Interest

A stay should not be granted because of the grievous harm it would cause both to

Chrysler and the public interest at large.  Chrysler's briefs will discuss in more detail the massive

harm that would be caused by granting a stay.  But the record is replete with evidence on this

point, and it cannot be seriously contested.  This factor is especially salient here in light of the

interests of the workers, families and communities at stake in this bankruptcy and the stark

consequences of delay.

The Treasury Department has supported Chrysler's restructuring efforts to preserve and

create tens of thousands of jobs, provide benefits to workers and retirees, and improve Chrysler's

operations and its technology.  But Treasury's support has limits:  if Chrysler fails to complete

the Proposed Sale as scheduled, the reputational, operational and other harms of a pending

bankruptcy will almost certainly result in liquidation.  *See* Affidavit of Ronald E. Kolka dated

April 30, 2009 ("Kolka Aff.) at ¶¶ 90-92 (a copy of this affidavit, without the exhibits, is

attached as Exhibit B to the Declaration of Li Yu ("Yu Decl.")).  At a minimum, a stay will put

Chrysler in material default under its Debtor-in-Possession financing loan from Treasury.

As Chrysler's CFO described in his declaration, liquidation of Chrysler would have bleak

consequences for its direct stakeholders, including:

- More than 38,000 Chrysler workers in the United States will lose their jobs;

- Chrysler will close its 23 manufacturing facilities and 20 parts depots, negatively
  affecting dozens of communities;

- Chrysler's current and retired employees, and their spouses, will lose billions in
  health care and pension benefits; and

- More than 3,000 Chrysler dealers likely will close or suffer significant,
  irreparable harm to their businesses.

*See* Kolka Aff. at ¶ 6.  Indirectly, Chrysler's liquidation also would have negative consequences

for the entire U.S. economy.  Finally, it is well-settled that the public interest "lies in the

expeditious administration of bankruptcy cases."  *ePlus, Inc. v. Katz (In re Metiom, Inc.)*, 318

B.R. 263, 272 (S.D.N.Y. 2004); *see also In re Savage & Assoc., P.C.*, 05 Civ. 2072(SAS), 2005

WL 488643, at *2 (S.D.N.Y. Feb. 28, 2005).  Put simply, the public interest would be devastated by the delay occasioned by the stay sought.

**II.    Objectors Have Failed to Show a Likelihood of Irreparable Harm**

In contrast to the massive and irreparable harm that could be inflicted on the Chrysler on the public interest, the Objectors cannot show they face a likelihood of irreparable harm absent a stay.  This dooms their motion, because irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction."  *Rodriguez v. DeBuono*, 175 F.3d 227, 233-34 (2d Cir. 1999).  As Judge Gonzalez correctly concluded in denying the Objectors' request for a stay in the Bankruptcy Action, they had failed to establish either that they will suffer a loss without a stay or that any such loss is imminent, rather than speculative.[1]  Here, Objectors again have failed to make either showing.

A.    Objectors Cannot Show That They Will Suffer Any Loss If the Proposed Sale Is Approved

As Judge Gonzalez concluded, the only type of harm that Objectors, whose interests are purely pecuniary, can assert is that consummation of the proposed sale may possibly result in a reduction in the value of their recovery.  However, Objectors "ha[ve] not established [what] the value of their claim [was] as of the petition date" or "the value of the collateral that secures their claim" — in other words, the record only contains evidence of what Objectors would receive if the proposed sale is consummated, but not what they would receive if the sale does not go through.  *See* Order Denying Stay dated May 20, 2009 at 3.  The Objectors have presented no

---

[1]    See May 20, 2009 Order Denying Emergency Motion of Indiana Pensioners for Stay of Proceedings Pending Determination of Motion to Withdraw the Reference (the "Order Denying Stay dated May 20, 2009") at 2-4.  A copy of that order is attached as Exhibit A to Yu Decl. Judge Gonzalez also correctly concluded that granting a stay likely will cause substantial harm to the debtors – an issue Chrysler likely will address in its opposition to the Stay Motion.

evidence that they would recover a greater amount in a liquidation and thus cannot demonstrate injury.

Because Objectors have failed to adduce the valuation evidence necessary for making the relevant comparison, they cannot "establish that the absence of a stay will result in a [] loss," let alone irreparable harm.[2]  *See id*.; *cf. Nat'l Football League Players Ass'n v. Nat'l Football League Properties, Inc*., 90 Civ. 4244 (MJL), 1991 WL 79325, at *4 (S.D.N.Y. May 7, 1991) ("conclusory statements of [irreparable harm] will not make it so without more to support [a preliminary injunction]").

    B.    <u>Any Loss Related to Consummation of the Sale Is Merely Speculative</u>

Even assuming the Objectors can identify a specific loss associated with consummation of the proposed sale.  Any alleged loss, at this juncture, is speculative rather than imminent.  As Judge Gonzalez correctly observed, the Objectors have two opportunities under 11 U.S.C. § 363 to object to the proposed sale — first, they have the right to challenge that sale at the May 27, 2009 hearing; then, if the proposed sale is approved, they have the right, under 11 U.S.C. § 363(m), to seek a stay and appeal to the district court the approval of the sale.  *See* Order Denying Stay dated May 20, 2009 at 3-4.

In their papers before this Court, Objectors offer no evidence of any imminent loss. Their purported harms remain in the realm of pure speculation.  Indeed, each decision they cite

---

    [2]    Objectors may claim that this evidence is absent because they have not conducted discovery.  However, Objectors had several weeks to seek such discovery but chose not to do so. *See* Objection of the United States Department of the Treasury to Motion by Indiana Pensioners to Withdraw the Reference ("Withdraw Opp. Br.") at 3-5.

    This delay and lack of diligence undermines Objectors' assertion of irreparable harm. *See Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985)("[d]elay in seeking enforcement of [] rights [] tends to indicate at least a reduced need for such" preliminary injunctive relief); *see also Hirschfeld v. Spanakos*, 909 F. Supp. 174, 179 (S.D.N.Y. 1995) (denying stay pending appeal because delay undercuts any suggestion of irreparable injury).

on the issue of irreparable harm, *see* Stay Motion at 6, involves an application for a stay from a final decision by a bankruptcy court.  *See In re Country Squire Assoc. of Carle Place, L.P.*, 203 B.R. 182, 183-84  (B.A.P. 2d Cir. 1996) (lifting of automatic stay had resulted in foreclosure in state court); *In re Adelphia Commc'ns, Corp.*, 361 B.R. 337 (S.D.N.Y. 2007) ((bankruptcy court had confirmed plan of reorganization); and *In re St. Johnsbury Trucking, Corp.*, 185 B.R. 687, 688 (S.D.N.Y. 1995) (same).  None helps Objectors show that they can meet the threshold irreparable harm requirement.

### III.    <u>There Is No Likelihood That Objectors Will Succeed on the Merits</u>

A.    <u>Objectors Cannot Succeed on Their Motion to Withdraw the Reference Because the Motion to Withdraw Is Untimely and Because They Have Not Established Standing to Pursue Their Claims</u>

As a threshold matter, the Objectors cannot establish a likelihood of success on their motion to withdraw the reference because that motion was untimely.  As set forth more fully in Treasury's response to Objectors' motion to withdraw the reference, Objectors' decision to wait until the last minute to move to withdraw the reference dooms their claim under the plain language of 28 U.S.C. 157(b), which requires that such motions be "timely." *See* Withdraw Opp. Br. at 3-5.

Moreover, as the Bankruptcy Court also noted, there are serious questions as to whether the Objectors have standing to pursue many of their arguments.  *See* Order Denying Stay dated May 20, 2009 at 5; *see also* Withdraw Opp. Br. at 3-5.  First, as the Debtors and others will address in their papers, Objectors lack standing under the relevant contracts to act as secured lenders.  Second, Objectors also lack constitutional and prudential standing to raise their arguments.  *See id.* at 17-21.

6

B.     Objectors Are Not Entitled to a Stay Unless They Can Demonstrate the Substantive
       Merits of Their Asserted Statutory and Constitutional Arguments

Objectors' motion also should be denied because they do not have a likelihood of success

on the substantive merits of their constitutional and statutory claims.  Objectors' Motion to

Withdraw conflates two distinct sets of questions relevant to different aspects of the Bankruptcy

Action – first, whether the Proposed Sale should be approved under applicable bankruptcy

principles; and, second, whether the Treasury Department should provide funds from the Trouble

Asset Purchase Program ("TARP") to the proposed purchaser of Chrysler's assets.  As to the first

issue, a challenge to the proposed sale presents a classic bankruptcy question – the

appropriateness of approving a sale pursuant to 11 U.S.C. § 363 – and should be resolved at the

May 27 hearing before Judge Gonzalez.  *See* 28 U.S.C. § 157(b)(2)(N) (identifying the approval

of sale of property of an estate as a "core proceeding" that should be heard in bankruptcy courts).

As to the second issue, on the other hand, Objectors must identify a specific waiver of

sovereign immunity to challenge Treasury's decision.  *See Luckett v. Bure*, 290 F.3d 493, 496-97

(2d Cir. 2002).  They have not done so here.  Even if they were to identify an applicable waiver

of sovereign immunity, they are not entitled to a stay based simply on showing that their

arguments regarding the Treasury Department's authority to provide funding under the

Emergency Economic Stabilization Act of 2008 ("EESA") and the Constitution to the proposed

purchaser of Chrysler's assets raise "non-core" issues, but also have to demonstrate that these

arguments are meritorious.[3]  They also have failed to make the latter showing.  Accordingly, the

Court should reject deny the Stay Motion.

---

  [3]   Objectors' contention that they can obtain a stay without having to establish that their
underlying legal theories have any merit, *see* Stay Motion at 4, should be rejected.  This would
amount to an end-run around the appropriate standard of review.

C.    Objectors' Statutory and Constitutional Arguments Lack Merit

Objectors' purported statutory and constitutional arguments boil down to a bald assertion

that the Treasury Department exceeded its statutory and constitutional authority by providing

TARP funding to the proposed purchaser of Chrysler's assets.  They are wrong.  In light of the

EESA's broad definition of "financial institutions" and provisions authorizing the Treasury

Department to make determinations about the appropriate recipients of TARP funding,

Treasury had ample statutory authority to make TARP funding available to the proposed

purchaser.  *See* 12 U.S.C. § 5202(5) (defining the term "financial institutions" broadly); §

5202(9) (authority for the Secretary of the Treasury to make determination).  Because EESA

authorizes Treasury to provide funding to the proposed purchaser, Objectors' constitutional

arguments also fail.

       1.  *Youngstown Is Inapposite Because The Government Has Not Seized Chrysler*
         *And In Any Event Its Actions Are Authorized By Congress*

Relying upon *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952), Objectors

argue that the Treasury Department lacks authority to "take effective possession of Chrysler,

impose new management and dictate the terms of its continued operations and ultimate survival."

Objection to Sale Motion at 26, ¶ (B)(I).[4]  *Youngstown* does not, however, apply to this case.

As a threshold issue, *Youngstown* involved a challenge to the constitutionality of the

physical seizure of steel mills by the Secretary of Commerce pursuant to an executive order.  In

*Youngstown*, the Government argued that the President was "acting within the aggregate of his

constitutional powers as the Nation's Chief Executive and the Commander in Chief . . . . "  *Id*. at

582.  The President has not physically seized and begun operating Chrysler pursuant to an

---

    [4]    A copy of this Objection to the Sale Motion, which is at docket no. 1185 in the
Bankruptcy Action, is attached as Exhibit E to Yu Decl.

executive order; indeed, contrary to the Objectors' claim, Treasury has not "seized" Chrysler in any sense of the word; rather, Treasury has merely provided funding as a way to facilitate a sale of Chrysler's assets for fair value, in a transaction negotiated at arms' length and in good faith. Indeed, the Bankruptcy Court has heard ample evidence of how Chrysler's board has remained independent and has discharged its fiduciary duty.

In *Youngstown*, the Court affirmed enjoining the mill seizures (1) because the President acted in the absence of statutory authorization by Congress and (2) because under the circumstances of that case the President did not have inherent Constitutional authority to seize private property. *Id*. at 585-87. Here, by contrast, the Treasury Department acted within the scope of its statutory authority to purchase assets. Express statutory authority for Treasury's actions may be found in EESA, authorizing Treasury "to purchase, and to make and fund commitments to purchase, troubled assets from any financial institution, on such terms and conditions as are determined by the Secretary . . . ." 12 U.S.C. § 5211(a)(1).

### 2. *Treasury's Transactions Fall Within The Express Authority Of EESA*

Objectors' papers, by omitting the full text of the TARP "financial institution" definition, mischaracterize the TARP authority as incapable of extending to Treasury's loans to the Debtors. The Emergency Economic Stabilization Act, Pub. L. 110-343 (HR 1424) Oct. 3, 2008 ("EESA") did not, as Objectors' papers suggest, *see* Objection to Sale Motion at ¶¶ 37-38, limit the definition of a "financial institution" only to banks and other entities expressly listed in the non-exclusive list of examples set forth at section 3(5) of EESA [12 U.S.C. § 5202]. Rather, EESA's definitions include the following:

> (5) FINANCIAL INSTITUTION.--The term "financial institution" means <u>any</u> institution, including, <u>but not limited to</u>, any bank, savings association, credit union, security broker or dealer, or insurance company, established and regulated under the laws of the United States or any State, territory, or possession of the United States . . .  and having significant operations in the United States . . . .

12 U.S.C. § 5202 (5) (emphasis added).  EESA thus defined "financial institution" broadly to mean "any" institution so long as it is established and regulated under the laws of the United States and has significant operations in the United States, and expressly specified that such institutions are "not limited to" banks, brokers, dealers or insurance companies.[5]  *Id*.

Notwithstanding the Objectors' reliance on post-EESA statements by former Secretary Paulson about his beliefs as to the "purpose" of TARP, *see* Objection to Sale Motion at 8, ¶ 40, both he and the current Treasury Secretary have executed and transmitted to Congress determinations finding that the Treasury's transactions are within its TARP authority.  *See* Determination of the Secretary of the Treasury dated Dec. 19, 2008 and Determination of the Secretary of the Treasury dated Apr. 29, 2009 (attached as Exhibits C and D to Yu Decl.).  Chrysler and New Chrysler inherently and inevitably are engaged directly or through affiliates in providing financing and insuring products through warranties.  Objectors have cited no act of Congress nullifying these determinations or otherwise withdrawing TARP authority for these transactions.

Moreover, a closer examination of the statements of former Secretary Paulson cited in Objectors' papers reveals that at no time did he opine that auto companies could not fit within EESA's definition of "financial institution."  To the contrary, former Secretary Paulson confirmed that the definition of "financial institution" set forth in EESA was "broad" and that the Act gave Treasury "very broad authorities and powers[.]"  Oversight of the Implementation of the Emergency Economic Stability Act of 2008: Hearing Before the House Financial Servs. Comm., 110th Cong. 14 (2008).

---

[5]    Indeed, even assuming that the list in section 3(5) of EESA is illustrative of the kinds of entities that are 'financial institutions,' Chrysler would qualify to receive TARP money under that statute because it had a long-standing practice of providing purchase financing to its customers.

Objectors' reliance upon these statements also is not persuasive because the statements

do not constitute "legislative history."  First, the statements were made after EESA was enacted,

not before.  The statements therefore are, at best, "subsequent legislative history," which courts

have agreed is "worthy of little weight," *Colt Indus., Inc. v. United States*, 880 F.2d 1311, 1313

(Fed. Cir. 1989), and is "less illuminating than the contemporaneous evidence[.]"  *Hagen v.*

*Utah*, 510 U.S. 399, 420 (1994); *accord PBGC v. LTV Corp.*, 496 U.S. 633, 650 (1990); *United*

*States v. Price*, 361 U.S. 304 (1960).  Regardless, the statements did not purport to act as

statements of legislative intent.  Former Secretary Paulson qualified his statements, indicating

that it was merely his "belief" that the purpose of TARP was not to lend to the auto companies.

*See* Oversight of the Implementation of the Emergency Economic Stability Act of 2008: Hearing

Before the House Financial Servs. Comm., 110th Cong. 14-15 (2008).  Such qualified statements

clearly do not constitute a formal or definite interpretation by Treasury of the legislative history

or purpose of EESA.  Moreover, the statements are not relevant as a supposed "admission of

law" by Treasury.  Admissions of that kind do not, as a rule, bind either the Court or the parties.

*Swift & Co. v. Hocking Valley Ry. Co.*, 243 U.S. 281, 289 (1917); *Hegeman-Harris & Co. v.*

*United States*, 194 Ct. Cl. 574, 581, 440 F.2d 1009, 1012 (1971).

The Objectors also argue that Congress's failure to pass the Auto Industry Financing and

Restructuring Act of 2008 (H.R. 7321), evidences a legislative intent to exclude auto companies

from receiving TARP financing.  *See* Objection to Sale Motion at 5, ¶ 9.  As a threshold matter,

the Auto Industry Financing and Restructuring Act was designed to authorize the use of <u>non-</u>

<u>TARP funds</u> to assist auto manufacturers like Chrysler, the non-passage of that legislative

proposal is not relevant to how Treasury can expend <u>TARP funds</u>.  *See* H.R. 7321, 110th Cong. §

10 (2008); see also 154 Cong. Rec. S10922-01 (daily ed. Dec. 11, 2008) (statement of Sen.

Feingold).  The Supreme Court has warned that "failed legislative proposals are a particularly

dangerous ground on which to rest an interpretation of a prior statute." *Solid Waste Agency of N.*

*Cook County v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 169-70 (2001) (quoting *Central Bank*

*of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 187 (1994)) (in turn

quoting LTV Corp., 496 U.S. at 650) (internal citations omitted).  This is because "[a] bill can be

proposed for any number of reasons, and it can be rejected for just as many others." *Solid Waste*

*Agency of N. Cook County*, 531 U.S. at 170.[6]

Further, Executive Branch actions relating to the Treasury's TARP loans, such as those

cited by the Objectors, *see* Objection to Sale Motion at ¶ 12, are actions that are within the terms

and conditions of the Treasury Department's Loan and Security Agreement and that were

authorized by EESA.  Congress authorized Treasury to enter into such transactions "to purchase,

and to make and fund commitments to purchase, troubled assets from any financial institution,

<u>on such terms and conditions as are determined by the Secretary</u>, and in accordance with this Act

and the policies and procedures developed and published by the Secretary."  12 U.S.C. §

5211(a)(1) (emphasis added).  All of the Treasury Department's actions are consistent with the

authority conferred by Congress through EESA.

---

[6]   One could just as easily conclude from this legislative history that Congress declined to pass the Auto Industry Financing and Restructuring Act of 2008 out of a belief that the pre-existing TARP funds could be used for this purpose, and that a separate authorization was unnecessary.  Indeed, immediately after the Senate failed to approve the Act, numerous senators suggested that the executive branch "consider using the TARP money to help the auto industry." *See* Sara Rich, "Rout as US car bailout crashes," THE AUSTRALIAN, Dec. 13, 2008, at 31 (quoting Senator Reid); *see also* "Auto bailout dies in Senate," CINCINNATI BUS. COURIER, Dec. 12, 2008 (Senator Voinovich opining that TARP funds "can [be] use[d] for the auto industry").  .

## CONCLUSION

For the reasons set forth above, the Treasury Department respectfully submits that the

Objectors cannot establish even one of the four factors needed to obtain a stay of the bankruptcy

proceedings.  The Stay Motion, therefore, should be denied.


Dated: May 22, 2009
        New York, New York


                                            LEV L. DASSIN
                                            Acting United States Attorney for the
                                            Southern District of New York,
                                            Attorney for the Treasury Department

                                    By:     s/ Li Yu
                                            JEANNETTE A. VARGAS
                                            TARA LAMORTE
                                            LI YU
                                            Assistant United States Attorneys
                                            86 Chambers Street, Third Floor
                                            New York, New York 10007
                                            Telephone: (212) 637-2678/2746/2734
                                            Facsimile:  (212) 637-2702


John J. Rapisardi
Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, New York 10281
Telephone:  (212) 504-6000
Facsimile:  (212) 504-6666
Email:  john.rapisardi@cwt.com

- Of Counsel to the Presidential
Task Force on the Auto Industry -