USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _5/26/09_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x   Chapter 11
                                         :
In re                                    :   Case No. 09-50002 (AJG)
                                         :   Jointly Administered
CHRYSLER, LLC., et al.,                  :
                                         :   Civ. Case No. 09 Civ. 4743 (LAP)
                          Debtors.       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x   **OPINION**

There are three motions before this court. The first is to withdraw

the reference to the Bankruptcy Court. The second is to stay proceedings in

the Bankruptcy Court pending determination of the motion to withdraw the

reference. The third, assuming the withdrawal of the reference, is to appoint a

Chapter 11 trustee and also to appoint an examiner.

For the reasons hereafter stated, the motion to withdraw the

reference is denied. The motion for a stay is also denied since there is no

reason for any such stay. Finally, since the motion to withdraw the reference

is denied, the issues about appointment of a trustee and an examiner will

remain with the Bankruptcy Court.

The above motions were filed in the District Court last Wednesday,

May 20. The immediate purpose of the motion to withdraw the reference is to

remove from the Bankruptcy Court the issues now scheduled to be heard in

that Court tomorrow, Wednesday, May 27. These issues relate to the proposal

to sell virtually all the assets of Chrysler to a new company, spoken of as "New

Chrysler." This proposed sale will be described in more detail hereafter. The

-2-

motion to withdraw the reference and the related motions have been extensively briefed, and were the subject of a lengthy hearing held today. At the conclusion of that hearing, the Court announced the disposition of the motions in accordance with what is stated above. The purpose of the present opinion is to explain the reasons for the rulings, and this explanation will necessarily be somewhat brief in nature.

It might be useful here to explain what is meant by a motion to withdraw the reference. A Bankruptcy Court is part of the local United States District Court. In order for a bankruptcy case to be litigated in the Bankruptcy Court, there must be a reference of that matter by the District Court to the Bankruptcy Court. However, under established procedures all bankruptcy cases are considered to be automatically referred to a Bankruptcy Court. But under the bankruptcy law there can be, under certain circumstances, the "withdrawal of the reference," in order to move a particular matter back to the District Court.

The following is the background of the motion to withdraw the reference in the present case. The various Chrysler entities filed under Chapter 11 on April 30. The culmination of the rather short bankruptcy process has been the proposal to sell virtually all the assets of Chrysler to "New Chrysler," to be owned by the U.S. Treasury Department, the Italian automaker Fiat, and an entity named VEBA Trust, connected with the United Auto Workers. The

proposed sale is under Section 363 of the Bankruptcy Law, 11 U.S.C. § 363.

The terms of this proposed sale are objected to by various parties, who have filed such objections with the Bankruptcy Court. The parties whose objections have materialized into the motion to withdraw the reference are certain Indiana State pension and benefit funds (the "Indiana Funds"), which hold approximately $40 million in Chrysler's Senior Secured Loans. The total amount of such Senior Secured Loans outstanding is approximately $7 billion. These loans are secured by substantially all of Chrysler's assets. Under their terms they are scheduled to mature in 2013. Interest is paid quarterly. Thus far there have been no defaults in the payment of interest.

If the proposed § 363 sale is approved and takes place, virtually all of the collateral for the Senior Secured Loans will be transferred to New Chrysler, and will no longer be security for the Loans. The sum of $2 billion will be paid to the bankruptcy estate for distribution to the Senior Secured Lenders. The loans will remain outstanding to the extent that there will be a deficiency of about $5 billion. This deficiency will be secured by assets left behind at the old Chrysler entity, which assets are of uncertain value but will surely amount to only a fraction of $5 billion.

The Indiana Funds have objected to the proposed § 363 sale. Although about 90% of the Senior Secured Lenders have consented to the sale, the Indiana Funds and certain other Senior Secured Lenders take an

independent position, and assert that their priority position has not been properly accounted for in the proposed sale. They argue that the terms of the proposed sale were arrived at in a manner which was not faithful to the proper and legal handling of a Chapter 11 proceeding. They argue that the Chrysler management failed to perform its fiduciary duty to protect interested parties, including Senior Secured Lenders. The Indiana Funds argue that the Federal Government, specifically the White House and the Treasury Department, dictated the terms of the sale and provided a limited amount of financing, all without statutory or other legal basis. The Federal Government takes the position that what it has done in the Chapter 11 proceeding and in connection with the proposed sale is to be found in the Emergency Economic Stabilization Act of 2008 ("EESA"), 12 U.S.C. §§ 5201 et seq., which established the Troubled Asset Relief Program ("TARP").

The Indiana Funds take the position that EESA and TARP, properly interpreted, do not provide any authority for what the Federal Government did here. They claim that the Federal Government has therefore committed a major violation of a federal statute.

It is necessary at this point to present certain details of what occurred. In early  2009 the Federal Government loaned Chrysler $4 billion on the basis that the EESA and the TARP program permitted loans to auto companies. When the Chrysler bankruptcy emerged, the Federal Government

took two basic steps. The Government agreed to provide debtor-in-possession financing in the amount of about $3 billion. It should be noted that the Canadian Government agreed to make such financing available in the amount of about $1 billion, for a total of such financing from both Governments of over $4 billion. The other activity of the Federal Government in connection with the Chapter 11 proceeding was to take the steps that it did to arrange for the proposed § 363 sale.

As already indicated, the Indiana Funds contend that these actions by the Federal Government were not authorized by EESA and TARP, and therefore had no legal authority. They also urge that the movement of the collateral for the Senior Secured Loans to New Chrysler would amount to a taking in violation of the Constitution.

The position of the Indiana Funds is vigorously contested by Chrysler, by Fiat, by the representative of the 90% of the Senior Secured Lenders, by the Committee of Unsecured Creditors, by the Federal Government, and by the Canadian Government. In essence, they argue that the Federal Government had legal authority for what it did, that the proposed § 363 sale was the result of vigorous negotiation in which the responsible parties did their duty, and that the overwhelming majority of the relevant "constituents" are in favor of the proposed sale.

Above all, as relates to the issues before the court today, they

oppose taking away the matter from the Bankruptcy Court.  The applicable

statute is Section 157(d) of the bankruptcy law, 28 U.S.C. § 157(d), which

provides:

> The district court shall, on timely motion of
> a party, . . . withdraw a proceeding if the
> court determines that resolution of the
> proceeding requires consideration of both
> title 11 and other laws of the United States
> regulating organizations or activities
> affecting interstate commerce.

However, the Second Circuit has expressly held that this language must be

"construed narrowly."  Shugrue v. Air Line Pilots Ass'n Int'l (In re Ionosphere

Clubs, Inc.), 922 F.2d 984, 995 (2d Cir. 1990).  This narrow construction

means that a District Court should not withdraw the reference where

bankruptcy issues to be resolved depend on the interpretation of a non-

bankruptcy statute but that this interpretation is closely intertwined with

standard bankruptcy considerations.

        The latter is surely true in the present case.  There is certainly a

need to interpret EESA and TARP.  But resolution of the issues about the § 363

sale involve a number of standard factual and legal issues presented in

bankruptcy matters, including whether responsible parties performed their

fiduciary duties, whether the terms of the proposed sale are such as to give

proper recognition to secured creditors, and whether the proposed sale is in

fact a reorganization, requiring the procedural protections given to the later

-7-

kind of proceeding.

There are surely issues to be decided by the Bankruptcy Court. But that is where they should be decided, subject to the right of appeal. At this late stage, when the Bankruptcy Court is nearing the completion of its work, it would be disruptive to remove the issues from a bankruptcy judge who has the background and is ready to complete his work.

There should be a word about the issue of standing. This issue has been discussed extensively in the briefs. There is no time for full discussion in this opinion. The Court simply reiterates what was said at the hearing, and that is that the Indiana Funds have standing to make their motion to withdraw the reference and to make the related motions.

## Conclusion

The motions to withdraw the reference, to grant a stay, and to have the District Court appoint a receiver and an examiner, are denied.

SO ORDERED.

Dated:     New York, New York
           May 26, 2009


_____
THOMAS P. GRIESA
U.S.D.J.